**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| Jolene C.,<br><br>      *Plaintiff,*<br><br>v.<br><br>Andrew Marshall Saul,<br>Commissioner of Social Security,<br><br>      *Defendant.* | Case No. 18 CV 50015<br><br>Magistrate Judge Lisa A. Jensen |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Jolene C. brings this action under 42 U.S.C. § 405(g) challenging the denial of disability benefits. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 42 U.S.C. 626(c). For the reasons set forth below, the decision is reversed and remanded for further proceedings consistent with this Memorandum Opinion and Order.

## **I. BACKGROUND**

Plaintiff was born on August 6, 1972. In July 2001, Plaintiff received a lumbar epidural anesthetic injection for labor and delivery and suffered numbness from her right inner thigh to her right inner calf muscles. R. 254. On September 13, 2011, Plaintiff filed her application for disability insurance benefits, alleging disability since May 1, 2007 with a date last insured on June 30, 2012. R. 9. On January 23, 2013, the Administrative Law Judge ("ALJ") held a hearing to review the Commissioner's denial of Plaintiff's request for benefits. R. 23. Plaintiff testified that she still felt numbness, she could not sit very long, she had to ice and elevate her knee daily, she was unable to stand for long periods of time, and her leg had gotten weaker since the alleged onset. R. 29–31. On March 29, 2013, the ALJ issued his decision that Plaintiff was

not disabled. R. 9–16. Plaintiff filed a complaint in the U.S. District Court for the Northern District of Illinois on July 23, 2014, and on April 11, 2016, Magistrate Judge Iain Johnston issued an opinion remanding the decision for further proceedings. R. 823–51.

Pursuant to the remand, the Appeals Council directed the ALJ to conduct another administrative hearing to primarily give more extensive discussion of the musculoskeletal listings in relation to the Plaintiff's condition. R. 725. On October 18, 2016, Plaintiff, represented by an attorney, testified at another hearing before the ALJ. Dr. Steven Golub, an impartial medical expert, and Diamond Warren, an impartial vocational expert, appeared and testified at the hearing. R. 743–803.

Plaintiff testified that her leg worsened and that she could only walk half a block. R. 754. She testified that Dr. Christopher Jelinek was her primary care physician and that he was familiar with how Plaintiff was functioning the past several years. R. 757–58. Plaintiff further testified that Dr. Jelinek's only recommendation was physical therapy. R. 758. Plaintiff was only able to sit fifteen to twenty minutes before she had to stand up. R. 761. At home, Plaintiff took care of the children, did laundry, vacuumed, and performed other household activities. R. 762. Plaintiff testified that she could do a household activity for only about ten or fifteen minutes before she had to sit. R. 763.

Dr. Golub testified as an impartial medical expert who reviewed Plaintiff's medical records. Dr. Golub testified that he was familiar with Listing 1.04, disorders of the spine. R. 769. Listing 1.04(A) describes disorders of the spine with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1. Dr. Golub testified that

he had reviewed records of Dr. Mirza from July of 2001, including an EMG that was consistent with radiculopathy. Dr. Golub agreed that at least as of 2001 Plaintiff's doctors were diagnosing some kind of neurologic injury. Dr. Golub stated he reviewed an MRI from April 2004 and the latest thorough examination he reviewed was by Dr. Arcadio Dumpit in November 2011.[1] R. 770. Based on the history and findings set forth in his record review, the ALJ asked Dr. Golub if Plaintiff satisfied the requirements of Listing 1.04(A). Dr. Golub answered, "Yes." R. 773. Dr. Golub stated that the straight leg raise was positive back in 2011 and there was neuroanatomic distribution, both of which equaled the requirements in Listing 1.04(A). *Id.* The ALJ then pointed to the examination from June 2014 by Plaintiff's treating family physician, Dr. Jelinek. *Id.* Dr. Jelinek found Plaintiff's straight leg raising was negative. *Id.* The ALJ asked Dr. Golub in light of these findings "[a]re you changing your mind about whether or not this person meets or equals a listing?" R. 774. Dr. Golub responded, "I think it's going to be really difficult to make concrete appraisal without a more thorough, a more recent exam." *Id.*

The ALJ also asked Dr. Golub about his opinion regarding Plaintiff's capacity to do work before June of 2012. He read Dr. Golub the results of a 2006 MRI of the lumbar spine. Dr. Golub testified that "based on that [MRI report,] there's no nerve root impingement. And, by the way, there was no nerve root impingement in 2002 either. So, that leads me to wonder, why the degree of clinical symptoms . . . I really think she needs a thorough clinical exam to see what the level of dysfunction is." R. 778. The ALJ asked him "Do you feel confident that she meets or equals a listing?" *Id.* He stated "No, not -- I don't know, because you -- that exam bothers me in 2014." *Id.*

---

[1] Dr. Dumpit was an internal medicine consultative examiner who examined Plaintiff on October 7, 2011.

Diamond Warren, the vocational expert, also testified at the hearing. The ALJ asked if there are jobs for an individual with Plaintiff's residual functional capacity ("RFC"). Mr. Warren answered that such an individual could work as a call-out operator or an address clerk. R. 791.

Following the hearing, Plaintiff underwent a neurologic consultative examination performed by Dr. Rakesh Garg on November 7, 2016. R. 1010. Dr. Garg opined that Plaintiff "has no wasting in any of the muscles in the right leg and if she has any problem with the nerve, some kind of muscle atrophy would be expected, but she has none." *Id.* Dr. Garg also opined that she had normal knee and ankle reflex on both sides indicating that she did not have lumbosacral radiculitis. *Id.* In sum, the "neuro examination is completely normal and [Dr. Garg did] not find any focal neurological deficit indicating either a neuropathy or a lumbosacral radiculitis." *Id.* Plaintiff did not require any cane or crutches. *Id.*

The same ALJ again issued his written opinion denying Plaintiff's claims for disability benefits. R. 725–36. In evaluating Plaintiff's claim, the ALJ used the Social Security Administration's five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset disability date, May 1, 2007, to her date last insured, June 30, 2012. R. 727. At step two, the ALJ found that Plaintiff had the following severe impairments: complications of childbirth epidural, right knee cyst, and mild obesity. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. 728. More specifically, the ALJ found that Plaintiff did not meet the requirements of either Listing 1.02 or 1.04. *Id.* With regard to his Listing 1.04 analysis, the ALJ stated that, based on a

4

November 2016 consultative neurology examination, there were no focal neuralgic signs that would implicate neuropathy or lumbar radiculitis. *Id.* Given the lack of evidence concerning nerve root compression, the claimant's impairments also would not satisfy Listing 1.04A requirements." R. 728.

The ALJ proceeded to step four where he found that Plaintiff had an RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except no more than occasional stooping, no climbing of ladders, ropes, or scaffolds, no crawling or kneeling, and no exposure to unprotected heights, heavy equipment, or operating machinery. R. 729. The ALJ found that Plaintiff had no past relevant work. R. 734. Finally, at step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could have performed. *Id.*

In his decision, the ALJ reviewed several medical opinions before ultimately deciding that Plaintiff was not disabled, under the Social Security Act, at any time from May 1, 2007, the alleged onset date, to June 30, 2012, the date last insured. R. 735. The ALJ found that the medical expert, Dr. Golub, stated the Listing 1.04 requirements "might be met" from the onset date to the December 2011 consultative examination by Dr. Dumpit, but Dr. Golub "seemed to change his mind" after reviewing the June 2014 examination by Dr. Jelinek. R. 733. The ALJ found Dr. Golub's analysis to be "sound and consistent[,]" and assigned his opinion "substantial weight, except to the extent claimant tenuously might suggest that Dr. Golub endorsed Listing Severity." *Id.* The ALJ went on to state that Dr. Golub was "clear in concluding that she did not meet a Listing[.]" *Id.* When assessing Dr. Garg's opinion, the ALJ found that the neurologic consultative examination was unremarkable. *Id.* It showed no wasting in any muscles in the right leg and no clinical finding indicating neuropathy or a lumbosacral radiculitis. *Id.* In Dr. Garg's estimation, Plaintiff had no need for a cane. *Id.* The ALJ found that ambulation

5

remained effective and that neither Listing 1.02 nor 1.04 would be met. *Id.* The ALJ accorded "substantial weight" to Dr. Garg's opinion minus portions of the opinion related to the RFC. R. 734. Finally, the ALJ gave Dr. Dumpit's 2011 examination "minimal weight because it is singular in nature, and superseded by other inconsistent substantial evidence." *Id.*

The ALJ also found that, when considering Plaintiff's RFC, "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." R. 730. The ALJ stated that Plaintiff reported issues with her right knee and falling, but there was no diagnostic imaging to support this impairment. *Id.* Plaintiff never went to the emergency room after a fall. *Id.* Further, the ALJ pointed to large gaps in treatment for this impairment; Plaintiff was not seen for right leg pain from October 2007 to September 2010, the right leg was not addressed until Dr. Dumpit's October 2011 examination, and it was not addressed again until June 2014. R. 730–31. As to whether Plaintiff's impairments require her to avoid sitting down for an extended period of time or require her to elevate her leg during substantial portions of the day, the ALJ also found that Plaintiff did not use any pain medications except over-the-counter analgesics. R. 732. Further, the ALJ found that despite having medical insurance, Plaintiff had never undergone an EMG to evaluate why she was falling three times a day. *Id.* The ALJ finally pointed to the November 2016 consultative neurological examination that showed no abnormalities and to the lack of evidence of pain management or physical therapy treatment. R. 731.

The ALJ found the Plaintiff to be "not consistent." *Id.* The ALJ found Plaintiff's testimony that she was not using a cane because it was not recommended to her to be inconsistent with Plaintiff's October 2011 consultative examination where Dr. Dumpit did advise that a cane would be helpful. *Id.* Plaintiff testified that she needs to go with someone to go

6

grocery shopping, but her function report indicated that she could shop on her own. *Id.* In sum, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are *not entirely consistent* with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* (emphasis added).

On March 1, 2017, the ALJ issued his decision finding that Plaintiff was not disabled. R. 725–36. Plaintiff filed another complaint in this Court on January 19, 2018, seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has set forth a five-step sequential evaluation process to determine if a claimant is disabled: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? 20 C.F.R. § 404.1520(a)(4); *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

If the Commissioner's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the reviewing court takes a very limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks to whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 579 F.3d 668, 673 (7th Cir. 2008). Thus, even if reasonable minds could differ as to whether the clamant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

### III. ANALYSIS

In the present case, Plaintiff advances two main arguments for reversing or remanding the decision. First, Plaintiff argues that the ALJ erred in finding that Plaintiff's right extremity impairment did not meet the 20 C.F.R. Pt. 404, Subpart. P, App. 1, § 1.04(A) listing. Second, Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's statements that addressed the intensity, persistence, and limiting effects of her pain and symptoms. For the reasons set forth below, the Commissioner's decision is reversed and remanded.

**A. Listing Determination**

First, Plaintiff argues that the ALJ erred in finding that Plaintiff's right extremity impairment did not meet the Listing 1.04(A). Listing 1.04(A) states that a spinal disorder qualifies as a disability if there is "[evidence] of nerve root compression characterized by neuro-

anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg test (sitting and supine)[.]" 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.04(A). To satisfy step three, a Plaintiff must show that she met or medically equaled the criteria under Listing 1.04(A) during the relevant period. *McHenry v. Berryhill,* 911 F.3d 866, 872 (7th Cir. 2018). The relevant period is between the date of alleged onset of disability and the date last insured. *McHenry*, 911 F.3d at 869. Here, Plaintiff's onset date is May 1, 2007 and her date last insured is June 30, 2012. Thus, if Plaintiff met the 1.04(A) listing requirements between May 1, 2007 and June 30, 2012, she is determined to be disabled, no further analysis is required, and she is entitled to benefits.[2]

Dr. Golub was called to testify at the rehearing as a consultative expert to address the issue of whether Plaintiff met the 1.04(A) listing during the relevant period. Dr. Golub testified that he was familiar with the Commissioner's Appendix 1 listing criteria, in particular §1.04. R. 769. The ALJ asked Dr. Golub whether Plaintiff satisfied the requirements of Listing 1.04(A). R. 772–73. Dr. Golub answered, "Yes." R. 773. Dr. Golub noted that the straight leg raise was positive in 2011 and there was neuroanatomic distribution, both of which were characteristics satisfying Listing 1.04(A). *Id.* A physician's retrospective opinion that the claimant was disabled during the relevant time period is relevant and may be substantial evidence of disability if it is corroborated by evidence contemporaneous with the eligible period. *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). Here, Dr. Golub's opinion that plaintiff met Listing 1.04(A) as of October 2011 was corroborated by Dr. Dumpit's October 2011 examination findings. Dr. Dumpit observed diminished right popliteal and dorsalis pedis pulses due to pedal edema. R.

---

[2] 20 C.F.R. § 404.1509 states that the impairment must have lasted for a continuous period of at least 12 months.

9

424. Active range of motion testing of the lumbar spine produced pain in the lower back and numbness and tingling in the right leg. R. 425. She had pitting edema in the right leg and right foot. R. 425. She demonstrated a positive straight leg raise test. *Id.* Right lower extremity strength was diminished. Her gait was uneven and wobbly due to lower back pain. She demonstrated diminished right step length, step height and push off. *Id.* She demonstrated difficulty getting onto and off the examination table due to low back pain and right leg pain and numbness and difficulty squatting and rising due to right leg pain numbness. *Id.* She had decreased sensation to touch in the right leg and right foot. *Id.* Her right knee- and ankle-deep tendon reflexes were decreased. *Id.*

In his analysis of step three, however, the ALJ did not even address Dr. Golub's retrospective opinion or the corroborating medical record evidence that substantiated it. Rather, the ALJ pointed to a 2016 consultative examination by Dr. Garg, performed after the hearing, that showed no focal neurological signs that would implicate neuropathy or lumbar radiculitis. R. 728. The ALJ stated that "[g]iven the absence of evidence concerning nerve root compression, the claimant's impairments also would not satisfy Listing 1.04A requirements." *Id.*

The ALJ offered further justification for the lack of 1.04(A) listing criteria in his step three analysis. According to the ALJ, Dr. Golub indicated that an October 2006 lumbar MRI showed an absence of disc herniation, stenosis or foraminal narrowing. R. 728. The ALJ stated that in Dr Golub's view, the October 2006 MRI diminished the significance of a July 2001 evaluation by orthopedic Dr. Mirza,[3] reflecting right 3-4/5 quadricep weakness and an EMG that appeared possibly consistent with right L2-L4 radiculopathy. *Id.* However, Dr. Golub did not

---

[3] The ALJ's opinion referred to a July 2011 evaluation of Dr. Mirza. R. 728. This Court believes this is a typographical error as Dr. Mirza evaluated Plaintiff in July of 2001 and thus this Court assumes that is the evaluation to which the ALJ is referring.

10

say that the 2006 MRI diminished any findings by Dr. Mirza. Dr. Golub testified that "[i]t has to be substantiated by a clinical exam. If it's not, I don't care, really, what the MR shows." R. 779. In fact, Dr. Golub was aware of a previous 2002 MRI that also showed that there was no evidence of nerve root impingement and he still voiced his opinion that she met the 1.04 listing as of October 2011. R. 778.

More importantly, however, even assuming that Dr. Golub's testimony can be construed as concluding that the 2006 MRI diminished the significance of Dr. Mirza's 2001 exam findings, the ALJ does not explain how this is relevant or somehow detracts from Dr. Golub's testimony that Plaintiff met Listing 1.04(A) at the time of Dr. Dumpit's October 2011 examination. Dr. Mirza's 2001 evaluation was six years prior to the alleged onset date. The 2006 MRI was one year prior to the alleged onset date. Without explanation, this Court cannot determine the ALJ's line of reasoning here and even if it could, federal courts cannot build the logical bridge on behalf of the ALJ. *Jensen v. Colvin*, No. 10 CV 50312, 2013 WL 5346418, at *10 (N.D. Ill. Sept. 23, 2013).

Perhaps the ALJ was aware of his overreach with respect to his interpretation of Dr. Golub's testimony. He concluded his step 3 analysis by stating that he "is accepting the point of view of post-remand consultative neurologist Rakesh Garg, M.D. as dispositive on the issue of Listing severity, and is not relying simply upon the construction of the medical expert at hearing." R. 728. However, nowhere in his step three analysis did the ALJ explain how a 2016 examination was dispositive as to whether Plaintiff met Listing 1.04(A) prior to July of 2012.[4]

---

[4] In fact, at the hearing, the ALJ seemed to admit that the results of the 2016 exam would have little relevance to Plaintiff's condition during the insured period. He states: "So, if I go and I get the 2016 or 2017 evaluation, it's either going to more or less along the lines of the evaluation in 2014. Could be like the evaluation in 2011. How's that really helping us during the insured period?" R. 785.

11

"The law requires that a claimant demonstrate his disability within the prescribed period of eligibility, not prior to nor subsequent to the dates in question." *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971); *see also Gonzales v. Berryhill*, No. 5:18-cv-01324-JDE, 2019 U.S. Dist. LEXIS 83116, at *14 (C.D. Cal. May 16, 2019) (statement that Plaintiff could walk four blocks contained in medical records over two years after relevant period ended had limited relevance to her condition during relevant period); *Coronado v. Comm'r of Soc. Sec.*, No. 115CV00806AWISAB, 2017 WL 489209, at *20 (E.D. Cal. Feb. 6, 2017) ("If Claimant improved after the date last insured and prior to [the doctor's] examination, then the limitations that [the doctor] assessed do not accurately reflect Claimant's condition prior to date last insured."); *Cueller v. Astrue*, No. 10-C-619, 2011 WL 1743841, at *9 (E.D. Wis. May 5, 2011) ("Even if the plaintiff's weight loss could lead to the conclusion that he is not presently disabled, it does not preclude a finding that he was disabled at some prior period after his alleged onset but prior to the date last insured. The ALJ did not seem to consider this possibility." Thus, remand was ordered.)

If there was some specific reason why the ALJ felt that a 2016 examination, some four years after the date last insured, was "dispositive" as to whether Plaintiff met Listing 1.04(A) during the relevant period, he was required to explain that opinion thoroughly. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ . . . must adequately articulate his analysis so that [a reviewing court] can follow his reasoning."); *see also Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion). This Court read the entire opinion in search of further explanation by the ALJ regarding his finding that Plaintiff did not meet the 1.04(A)

Listing. The ALJ's decision must be read as a whole. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). Nowhere in the ALJ's opinion did he explain why the 2016 evaluation was dispositive on the issue of Listing criteria during the relevant period.

In his analysis of step 4, the ALJ acknowledged that "Dr. Golub said Listing 1.04 might be met through [the] December 2011 Arcadio Dumpit consultative examination[.]" R. 733. He stated, however, that Dr. Golub "seemed to change his mind based upon the June 2014 Christopher Jelinek examination." *Id.* This was a mischaracterization of Dr. Golub's testimony. As set forth above, when asked if Plaintiff met the 1.04 listing, Dr. Golub answered "Yes." R. 773. He based this answer on Dr. Dumpit's findings on his October 7, 2011 examination. Thus, Dr. Golub unequivocally stated that Plaintiff met the listing at least through October 7, 2011. When the ALJ drew Dr. Golub's attention to the June 2014 Dr. Jelinek examination, he did not ask Dr. Golub if those results changed his mind as to whether Plaintiff met the listing during the relevant period. The ALJ asked him "Do you feel confident that she meets or equals a listing?" R. 778. To which Dr. Golub responded "No, not -- I don't know, because you -- that exam bothers me in 2014." *Id.* At most this answer indicated that Dr. Golub was uncertain, based on the new information given to him by the ALJ, whether Plaintiff met the listing in June of 2014 or thereafter. The ALJ did not explain why Dr. Golub's uncertainty as to whether Plaintiff met the 1.04(A) listing in June of 2014 or thereafter diminishes his unequivocal testimony that she met the listing prior to June of 2012. Plaintiff only had to establish that she met the Listing at some time during the relevant period and that those Listing criteria lasted for a duration of at least 12 months. 20 C.F.R. §§ 404.1520(d), 404.1509.

Moreover, the ALJ's questioning of Dr. Golub regarding Listing 1.04(A) was phrased in such a way that he appears to be asking Dr. Golub if Plaintiff currently meets the listing. He

13

asked "Do you feel confident that she meets or equals a listing?" R. 778. Later he asked "So, let's say that you were simply looking at the record now, and I'm concluding that, based on your last response, we're not meeting or equaling any one of the Commissioner's listings, correct?" *Id.* However, whether Plaintiff meets Listing 1.04(A) now or at the time of the hearing is not relevant to his step three analysis. *See Blom v. Barnhart*, 363 F.Supp.2d 1041 (holding that the ALJ improperly focused his questioning on plaintiff's current condition rather than the relevant time period). If the ALJ determines that Plaintiff does not currently meet the Listing, this may be used as a basis for determining an end date for her disability benefits. But failing to meet the listing now (or at the time of the hearing) does not, at least without some explanation, mean that she did not meet the listing during the relevant period. This is especially true given Dr. Golub's testimony that she met the Listing 1.04(A) as of October of 2011. R. 773.

The ALJ's assignment of weight to the medical evidence did not provide adequate explanation for his findings regarding the Listing. The ALJ gave Dr. Dumpit's 2011 examination "minimal weight because [it] is singular in nature, and superseded by other inconsistent substantial evidence." R. 734. However, the inconsistent evidence included Dr. Jelinek's 2014 examination and Dr. Garg's 2016 examination, both of which were subsequent to the relevant period. Once again, the ALJ did not explain why this subsequent evidence is "substantial" with respect to whether she met the Listing during the relevant period. Dr. Dumpit was selected by the Commissioner to examine Plaintiff. When such an examining doctor finds a claimant disabled and the ALJ rejects that opinion, the Seventh Circuit has deemed this as an "unusual step" that requires a "good explanation[.]" *Beardsley*, 758 F.3d at 839. As set forth above, no such explanation was offered by the ALJ. Moreover, the examination by Dr. Garg, which the ALJ ruled was dispositive on whether Plaintiff met the listing, was also "singular in

14

nature" and more importantly occurred subsequent to the relevant period.  The ALJ did not explain how this singular evaluation, that occurred subsequent to the relevant period, is entitled to more weight than the singular examination performed by a consultative examiner during the relevant period, especially in light of the fact that that consultative examiner found the Plaintiff disabled.

Nor did the ALJ's discussion of the weight given to Dr. Golub's findings adequately address the ALJ's finding that Plaintiff did not meet Listing 1.04(A).  The ALJ stated that he was giving Dr. Golub's opinions "substantial weight" in all regards "except to the extent that claimant tenuously might suggest that Dr. Golub endorsed Listing severity.  Dr. Golub was clear in concluding that she did not meet a Listing and that she retained some reduced work capacities." R. 733.  Giving substantial weight to all portions of Dr. Golub's opinion except the opinion that she met Listing 1.04(A) is internally inconsistent.  The ALJ does not explain why only those portions of Dr. Golub's opinion deserved substantial weight.  Moreover, as set forth above, the ALJ mischaracterized Dr. Golub's opinion.  Dr. Golub was not "clear in concluding that she did not meet a listing" especially with regard to the relevant time period.  In conclusion, because the ALJ did not adequately explain how a 2016 medical evaluation occurring four years after the date last insured was "dispositive on Listing severity" during the relevant period and further because the ALJ relied upon two examinations subsequent to the relevant period to discount a consultative examination conducted during the relevant period, without adequate explanation, the case must be remanded to the ALJ for further evaluation.  *See Steele*, 290 F.3d at 940 (where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.")

15

This Court is not ruling that Plaintiff's medical records or examinations after the relevant time period can never be relevant to whether a social security claimant meets a Listing during the relevant time period. The Seventh Circuit has ruled that medical records that postdate the relevant time period may shed light on the claimant's disability during the relevant time period. *Halvorsen v. Heckler*, 743 F.2d 1221, 1226 (7th Cir. 1984).[5] However, because the ALJ failed to adequately explain why or how medical examinations subsequent to the date last insured are relevant to whether Plaintiff met Listing 1.04(A) during the relevant period, this case must be remanded. During remand the ALJ must address specifically whether Plaintiff met Listing 1.04(A) during the relevant time period (May 1, 2007 through June 30, 2012). If the ALJ is relying on medical examinations that postdate the relevant period to support a conclusion that Plaintiff did not meet the Listing during the relevant period, he must explain how these subsequent examinations are relevant to Plaintiff's medical condition during the relevant period. The ALJ should also address the time period during which she met the Listing, and if it is the ALJ's determination that she no longer meets the Listing, the last date on which she met the Listing.

This Court is mindful that this is the second remand on the issue of the listing criteria. However, given the findings of the consultative examiner Dr. Dumpit, which supported a finding of disability by virtue of the listing criteria and a second consultative expert who relied on those findings to opine that Plaintiff met the Listing 1.04(A) criteria during the relevant period, any decision that discounts those findings must be clearly explained.

---

[5]. However, *Halverson* dealt with a situation where records that postdated the relevant time period helped establish a claimant's disability prior to the insured status.

**B. Symptoms Evaluation**

Second, Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's statements that addressed the intensity, persistence, and limiting effects of her pain and symptoms. More specifically, Plaintiff argues that the ALJ impermissibly used a "not entirely consistent" standard and improperly assessed Plaintiff's credibility solely based on the absence of objective medical evidence. However, because the case is being remanded on other grounds and because the ALJ will likely have to reconsider his symptoms evaluation in light of any new findings, this Court need not determine whether the ALJ's symptoms evaluation was "patently wrong." *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2001) (An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong."). However, on remand, the ALJ should refrain from using the "not entirely consistent" boiler plate language that has been criticized by the Seventh Circuit.[6]

Moreover, in analyzing the Plaintiff's symptoms, the ALJ discounted Plaintiff's testimony in part because there were large gaps in the treatment of the impairment. R. 730–31. The ALJ did ask Plaintiff during the administrative hearing whether she had health insurance and if there were any other reasons why Plaintiff did not seek additional treatment or medical care, to which Plaintiff explained that money was tight. R. 755–56. Moreover, Plaintiff stated that an additional reason for the gaps in treatment were that she was told that there was nothing that

---

[6] The ALJ used the following boilerplate language in his opinion:

> the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 731. This language has been criticized by the Seventh Circuit. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014.) Its use has also raised concern as to whether the ALJ was applying the correct evidentiary standard. *See Minger v. Berryhill*, 307 F. Supp. 3d 865, 871–72 (N.D. Ill. 2018).

17

could be done for her. R. 756–57. Both of these stated reasons may be valid explanations for the lack of or infrequency of treatment. SSR 16-3p (recognizing that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services" and "[a] medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual."); *see also Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (reversing and remanding because the ALJ did not address claimant's concern about paying for therapy that would have limited her ability to pay for prescribed medications); *Estes v. Colvin*, No. 14-CV-3377, 2016 WL 1446218, at *6 (N.D. Ill. Apr. 11, 2016) (reversing and remanding because the ALJ did not properly consider the SSR 16-3p factors including the fact that a doctor opined that claimant reached maximum medical improvement and advised against additional injections or surgery). The ALJ, however, did not discuss either of Plaintiff's explanations for the gap in medical treatment in his opinion. This omission leaves this Court to guess whether the ALJ considered these reasons. On remand, the ALJ should adequately discuss the reasons Plaintiff offered to substantiate the gaps in medical treatment. The ALJ should also thoroughly explain which symptoms he found consistent or inconsistent with the evidence in the record and how his evaluation of Plaintiff's symptoms led to his conclusion. *See* SSR 16-3p.

## IV. CONCLUSION

For the reasons stated in this opinion, Plaintiff's motion for summary judgment [17] is granted, and the Commissioner's motion for summary judgment [18] is denied. The decision of the Commissioner is reversed and remanded for further proceedings consistent with this Memorandum Opinion and Order.

Date: July 11, 2019           By: _____
                                  Lisa A. Jensen
                                  United States Magistrate Judge